UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
ANGEL FIRE CORPORATION (THE) and
ANGEL FIRE SKI CORPORATION,

        Debtors.                     No. 11-93-12176-SS

TRUETT L. SCARBOROUGH,

        Plaintiff,

v.                             Adv. No. 11-1110-S

ANGEL FIRE RESORT OPERATIONS, LLC, a
New Mexico Limited Liability Company, and
ASSOCIATION OF ANGEL FIRE PROPERTY OWNERS,
INC., a New Mexico Nonprofit Corporation,

        Defendants.

**MEMORANDUM OPINION ON MOTION TO DISMISS
FIRST AMENDED COMPLAINT, MOTION FOR
<u>SUMMARY JUDGMENT AND MOTION TO ABSTAIN</u>**

This matter is before the Court on three motions: 1)
Defendant Angel Fire Resort Operations, LLC's ("Resort") Motion
to Dismiss First Amended Complaint ("MTD")(doc 19) and
Accompanying Brief (doc 20), Truett L. Scarborough's
("Plaintiff") Objection thereto (doc 22) with Accompanying Brief
(doc 24), as amended by an Addendum (doc 25), Resort's Reply
Brief (doc 29) and Exhibits (docs 31 and 32), Plaintiff's
Surreply (doc 53) and Resort's Final Reply (doc 54); 2) Defendant
Association of Angel Fire Property Owners', Inc. ("Owners")
Motion for Summary Judgment (doc 21) with Accompanying Memorandum
(doc 21-1), Plaintiff's Objection (doc 23) with Accompanying

Brief (doc 24), as amended by an Addendum (doc 25), Owners' Reply (doc 27), Plaintiff's Surreply (doc 53) and Owner's Final Reply (doc 55); and 3) Resort's Motion to Abstain (doc 44) with Accompanying Brief and Exhibits (doc 45), Plaintiff's Objection (doc 47) with Accompanying Brief and Exhibits (docs 48 and 49) as amended by a First Amendment (doc 50), and Resorts' Reply Memorandum (doc 52). For the reasons detailed below the Motion to Dismiss will be granted[1]. The Motion for Summary Judgment and Motions to Abstain will be denied as moot.

## MOTION TO DISMISS UNDER FED.R.CIV.P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) applies in bankruptcy cases. Fed.R.Bankr.P. 7012(b). That rule states:

> **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction;
> ...
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

---

[1] A bankruptcy court must determine if a proceeding is core. 28 U.S.C. § 157(b)(3). The determination of whether a proceeding is core by definition arises only under Title 11 and is by definition a core proceeding in itself. In re The Estate of the Assignment for the Benefit of Creditors of May, 405 B.R. 443, 449 (Bankr. E.D. Mich. 2008). A federal court always has jurisdiction to determine its own jurisdiction. Id. (Citing cases.)

In 2005 the Court of Appeals for the Tenth Circuit addressed dismissals for lack of jurisdiction:

> As a general rule, Rule 12(b)(1) motions to dismiss for lack of jurisdiction take one of two forms: (1) facial attacks; and (2) factual attacks. <u>Holt v. United States</u>, 46 F.3d 1000, 1002–03 (10th Cir. 1995). Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true. <u>Id.</u> at 1002. In a factual attack such as we have here, however, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. <u>Id.</u> In such a situation, the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1). <u>Id.</u>; <u>Wheeler v. Hurdman</u>, 825 F.2d 257, 259 n.5 (10th Cir. 1987). However, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." <u>Holt</u>, 46 F.3d at 1003. "[T]he underlying issue [in determining whether the jurisdictional question is intertwined with the merits] is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." <u>Pringle v. United States</u>, 208 F.3d 1220, 1223 (10th Cir. 2000).

<u>Paper, Allied–industrial, Chemical and Energy Workers International Union v. Continental Carbon Company</u>, 428 F.3d 1285, 1292 (10th Cir. 2005). See also <u>Sizova v. National Institute of Standards & Technology</u>, 282 F.3d 1320, 1324 (10th Cir. 2002) (Same.)

**BACKGROUND**

In 2003, the New Mexico Court of Appeals reviewed the history of the Angel Fire bankruptcies and interpreted the plan in a case not unlike the present controversy.

-3-

Angel Fire is a resort community located in Colfax County. Owners of real property within the resort area are assessed annual fees, the amount of which varies depending upon the nature of the property (_e.g._, residential or commercial; developed or undeveloped). In exchange for payment of the annual dues assessment, property owners receive a continued right of access to the Angel Fire ski area, golf course, country club, tennis courts, stables, and other amenities (the amenities). Restrictive Covenants, which were recorded each time a new subdivision was developed by the owner of the resort, initially secured this right of access.

In 1993, the Angel Fire Corporation[2] (the Corporation), which owned the resort at that time, and other related debtors, commenced a Chapter 11 bankruptcy proceeding under the Federal Bankruptcy Code. As part of the Chapter 11 reorganization effort, Defendant Angel Fire Resort Operations (the Resort)[3] agreed to purchase certain assets and liabilities from the estate of the bankrupt Corporation, including real property interests in the amenities. Pursuant to the Bankruptcy Code, various creditors, including a committee of property owners, submitted proposed plans for reorganization, each of which outlined the rights and obligations of those affected by the bankruptcy proceeding and the Resort's purchase of the amenities. Following negotiations between the various creditor groups and the bankruptcy trustee, an amended joint plan of reorganization (the Plan) was filed with and confirmed by the bankruptcy court. The Plan was accepted by a majority of all classes of claimants required to vote on it, including the property owners.

While the bankruptcy proceeding was pending, a committee of property owners filed an adversary proceeding[4] against the Corporation in bankruptcy court, seeking a declaratory judgment to clarify and protect their amenity rights. In order to resolve that lawsuit, the Resort expressly agreed, pursuant to Section 4.16(a) of the Plan, to execute and record a negative easement—the Supplemental Declaration of Restrictive Covenants and Easements (Supplemental

---

[2]Hereafter "Debtor".

[3]Hereafter "Resort".

[4]Hereafter "Bankruptcy Adversary".

-4-

Declaration). The Supplemental Declaration was
designed to clarify and make uniform the amenity rights
of the property owners. Prior to confirmation, the
Supplemental Declaration was executed as required by
Section 4.16(a) and attached to the Plan as "Exhibit
E." Both the Plan and the Supplemental Declaration
were recorded in the real property records of Colfax
County following the confirmation.

The Supplemental Declaration fixes the amount of
the annual dues assessment for the 1995-1996 season and
provides that the assessment may thereafter be
increased annually by an amount equal to the increase
in the Consumer Price Index. Although the document
does not set forth specific provisions governing the
use of the amenities by the property owners, it
acknowledges that the Resort and the official home
owners' association, the Association of Angel Fire
Property Owners (AAFPO)[5], had previously adopted rules
and regulations related to such use. At the time the
Supplemental Declaration was recorded, property owners
who paid their annual assessments in full were granted
unlimited access to the amenities without incurring
additional charges, such as green fees or lift ticket
costs.

The Plan itself also contains various provisions
relating to the annual assessment and property owner
use of the amenities. Section 4.16(h) permits the
Resort to modify the annual assessment structure for
new homesites and for existing homesites that are sold
or transferred after September 1996. By contrast,
sales prior to that date and transfers to children,
parents, brothers, sisters, grandchildren, or
grandparents of property owners are exempt from any
such modifications and are subject only to the annual
assessment structure in place at the time the Plan was
confirmed.

The Resort, with the approval of AAFPO, eventually
implemented various restrictions on the use of the
amenities by those who acquired property after May 24,
1997. While existing property owners were still able
to use the amenities free of charge, new property
owners were allowed only a 20 percent discount on
season ski lift passes and a 10 percent discount on
daily green fees. This restriction applied even if the

_____

[5]Hereafter "Owners".

new property owners paid their annual assessments in full.

Home and Land Owners, Inc. v. Angel Fire Resort Operations, L.L.C., and Ass'n of Angel Fire Property Owners, 2003-NMCA-070, ¶¶ 2-7, 133 N.M. 733, 69 P.3d 243.

**PLAINTIFF'S COMPLAINT**

The Court will paraphrase Plaintiff's Complaint. It alleges:

1. Plaintiff seeks a declaratory judgment clarifying the legal scope and effect of a confirmed Chapter 11 plan in the Angel Fire Corporation case. ("Plan" and "Debtor".)

2. He owns three lots in Monte Verde "V", Unit 1 ("Lots"). Resort, as successor in interest to Debtor, has attempted to assess fees it contends run with the land pursuant to the confirmed Plan, which was also filed in the real estate records of Colfax County, New Mexico.

3. Plaintiff was not properly made a plaintiff in the Bankruptcy Adversary.

4. He was listed as a creditor in the Debtor's bankruptcy, but Resort has no rights to assess fees against him on this ground.

5. He was wrongfully listed as a creditor and the creditors committee cannot assert claims against a non-creditor.

6. [Contains jurisdictional allegations.]

7. The Plan was confirmed on May 31, 1995.

8. Plaintiff owns three lots.

-6-

9.   Resort is successor in interest to the "estate of Debtor."

10.  Owners executed the Supplemental Declaration.

11.  This Court has jurisdiction under 28 U.S.C. § 1334.

12.  This Court has post-confirmation jurisdiction under 28 U.S.C. § 1334 and 11 U.S.C. § 1112(b) and Fed.R.Bankr.P. 3020(d). Jurisdiction was also retained pursuant to Article XII of the Plan, including ¶ 12.1(g).

13.  This is a core proceeding to determine the rights and interest of the Debtor and its successor in a matter concerning the property of the estate and the implementation of the confirmed Plan.  The determination will effect an adjustment of the relationship between Debtor's estate and Scarborough.

14.  There is an actual and ongoing dispute.

15.  The dispute concerns the ability to collect annual assessments under the Plan and Supplemental Declaration.

16.  The dispute is specific and concerns whether Resort can collect the assessment or foreclose because there is no covenant.

17.  Repetitive.

18.  There are no covenants on Scarborough's Lots.

19-23.   Plaintiff traces the ownership history of each Lot.

24.  Resorts filed a foreclosure on one lot but it was later dismissed.  Resorts has also made a claim against a different lot.

25.  Resorts claims the Supplemental Declaration created a

-7-

covenant running with the land.

26. The Supplemental Declaration settled the Bankruptcy Adversary proceeding. Plaintiff was not involved in the adversary and his right to due process would be denied if settlement of that suit affected his rights.

27. The Supplemental Declaration affirms there are no express covenants.

28. No right to make an annual assessment on Monte Verde "V", Unit 1 was ever transferred to Resort.

29-30. Plaintiff purchased no lots directly from Debtor, so his Lots were not within the scope of the Bankruptcy Adversary.

31. No predecessor in interest had the authority to bind owners of any lots in Monte Verde "V", Unit 1.

32. The Angel Fire Property Owners Committee in Debtor's bankruptcy case lacked any statutory authority under 11 U.S.C. §§ 1102 or 1103.

33. There are no express covenants for an annual assessment and Owners had no authority to create one.

> WHEREFORE, Scarborough prays for judgment declaring
> that neither Truett Scarborough nor his Lots are
> subject to any covenant putatively created or implied
> in the Plan or Supplemental Declaration to pay an
> annual assessment, dues or fees to AFRO [Resort] or
> AAFPO [Owners] and for such other and further relief,
> including but not limited to reasonable attorneys' fees
> and costs, as the Court deems just and proper in the
> premises.

Doc 1.

-8-

**BANKRUPTCY JURISDICTION**

Federal courts are courts of limited jurisdiction. <u>Ins.</u>
<u>Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456
U.S. 694, 701 (1982). The matters that federal courts have the
authority to hear and decide are set out in Art. III of the
Constitution. <u>Id.</u> Art. III therefore functions as a restriction
on federal power. <u>Id.</u> at 702. There is nothing parties to a
lawsuit can do to confer jurisdiction on a federal court if it is
not otherwise there. <u>Id.</u> Consent of a party is irrelevant to
the issue of jurisdiction. <u>Id.</u> Every federal court has a duty
to examine subject matter jurisdiction on its own motion before
proceeding to the merits of a case. <u>Id.</u>

Additionally, parties cannot agree to subject matter
jurisdiction. <u>Binder v. Price Waterhouse & Co., L.L.P. (In re</u>
<u>Resorts Int'l, Inc.)</u>, 372 F.3d 154, 161 (3rd Cir. 2004)(Citation
omitted.) Nor can the court "write its own jurisdictional
ticket." <u>Zerand-Bernal Group, Inc. v. Cox (In re Cary Metal</u>
<u>Products, Inc.)</u>, 23 F.3d 159, 164 (7th Cir. 1994).

Federal courts presume that they lack jurisdiction and the
burden is on the party asserting it. <u>Poplar Run Five Limited</u>
<u>Partnership v. Virginia Electric & Power Co. (In re Poplar Run</u>
<u>Five Limited Partnership)</u>, 192 B.R. 848, 855 (Bankr. E.D. Va.
1995)(Citing <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375,
377 (1994)). <u>See also</u> <u>Walnut Assoc. v. Saidel (In re Walnut</u>

-9-

<u>Assoc.)</u>, 164 B.R. 487, 490 (E.D. Pa. 1994)(Same.)  Similarly, a party removing an action to federal court has the burden of proving jurisdiction.  <u>Telluride Asset Resolution, LLC v. Telluride Global Development, LLC (In re Telluride Income Grown LP)</u>, 364 B.R. 390, 399 n.6 (10th Cir. BAP 2007).

Bankruptcy court jurisdiction derives from 28 U.S.C. §§ 1334 and 157.  <u>Resorts Int'l</u>, 372 F.3d at 161.  Congress can pass statutes that create certain rights, but Congress may not "abrogate the Art. III minima."  <u>Gladstone Realtors v. Village of Bellwood</u>, 441 U.S. 91, 100 (1979).  For example, Congress cannot erase Article III's requirement of standing.  <u>Raines v. Byrd</u>, 521 U.S. 811, 820 n.3 (1997).  Nor can Congress waive the actual "case or controversy" requirement.  <u>O'Shea v. Littleton</u>, 414 U.S. 488, 493 n.2 (1974).  Therefore, although bankruptcy jurisdiction is based on statutes, the limits imposed by Article III on general federal jurisdiction apply equally in the bankruptcy court.  <u>Illinois Investment Trust No. 92-7163 v. Allied Waste Industries, Inc. (In re Resource Technology Corp.)</u>, 624 F.3d 376, 382 (7th Cir. 2010).  <u>See also</u> <u>In re Saffold</u>, 373 B.R. 39, 44 (Bankr. N.D. Ohio 2007)(Same.)

In 1995, the United States Supreme Court described bankruptcy court jurisdiction:

> The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute.  Title 28 U.S.C. § 1334(b) provides that "the district courts shall have original

-10-

but not exclusive jurisdiction of all civil proceedings
arising under title 11, or arising in or related to
cases under title 11." The district courts may, in
turn, refer "any or all proceedings arising under title
11 or arising in or related to a case under title 11
... to the bankruptcy judges for the district." 28
U.S.C. § 157(a). Here, the Bankruptcy Court's
jurisdiction to enjoin respondents' proceeding against
Northbrook must be based on the "arising under,"
"arising in," or "related to" language of §§ 1334(b)
and 157(a).

Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). "Proceedings

'related to' the bankruptcy include (1) causes of action owned by

the debtor which become property of the estate pursuant to 11

U.S.C. § 541, and (2) suits between third parties which have an

effect on the bankruptcy estate. See 1 Collier on Bankruptcy ¶

3.01[1] [c] [iv], p. 3-28 (15th ed. 1994)." Id. n.5.

In attempting to strike an appropriate balance,
the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d
984 (1984), devised the following test for determining
the existence of "related to" jurisdiction:
"The usual articulation of the test for
determining whether a civil proceeding is related
to bankruptcy is whether the outcome of that
proceeding could conceivably have any effect on
the estate being administered in bankruptcy....
Thus, the proceeding need not necessarily be
against the debtor or against the debtor's
property. An action is related to bankruptcy if
the outcome could alter the debtor's rights,
liabilities, options, or freedom of action (either
positively or negatively) and which in any way
impacts upon the handling and administration of
the bankrupt estate." Id., at 994 (emphasis in
original; citations omitted).
The First, Fourth, Fifth, Sixth, Eighth, Ninth,
Tenth, and Eleventh Circuits have adopted the Pacor
test with little or no variation. The Second and
Seventh Circuits, on the other hand, seem to have
adopted a slightly different test. But whatever test
is used, these cases make clear that bankruptcy courts

-11-

> have no jurisdiction over proceedings that have no
> effect on the estate of the debtor.

Id. at 308 n.6. (Citations omitted).

Therefore, Bankruptcy Court jurisdiction is established and limited by 28 U.S.C. § 1334, which lists four types of matters over which the district court has bankruptcy jurisdiction: 1) cases "under" title 11 (which are the bankruptcy cases themselves, initiated by the filing of a Chapter 7, Chapter 11, etc. petition), 2) proceedings "arising under" title 11 (such as a preference recovery action under § 547), 3) proceedings "arising in" a case under title 11 (such as plan confirmation), and 4) proceedings "related to" a case under title 11 (such as a collection action against a third party for a pre-petition debt). Wood v. Wood (In re Wood), 825 F.2d 90, 92 (5th Cir. 1987).  In the District of New Mexico, all four types have been referred to the bankruptcy court.  See 28 U.S.C. § 157(a); Administrative Order, Misc. No. 84-0324 (D. N.M. March 19, 1992).

Jurisdiction is then further broken down by 28 U.S.C. § 157, which grants full judicial power to bankruptcy courts not only over cases "under" title 11 but also over "core" proceedings, § 157(b)(1), but grants only limited judicial power over "related" or "non-core" proceedings, § 157(c)(1).  Wood, 825 F.2d at 91; Personette v. Kennedy (In re Midgard Corporation), 204 B.R. 764, 771 (10th Cir. BAP 1997).  This core/non-core distinction is important, because it defines the extent of the Bankruptcy

-12-

Court's jurisdiction and the standard by which the District Court (or Bankruptcy Appellate Panel) reviews the factual findings. Halper v. Halper, 164 F.3d 830, 836 (3rd Cir. 1999).

"Core" proceedings are matters "arising under" and "arising in" cases under title 11. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. Matters "arise under" title 11 if they involve a cause of action created or determined by a statutory provision of title 11. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. Matters "arise in" a bankruptcy if they concern the administration of the bankruptcy case and have no existence outside of the bankruptcy. Wood, 825 F.2d at 97; Midgard, 204 B.R. at 771. Bankruptcy judges may hear and determine core proceedings and enter final orders and judgments. 28 U.S.C. § 157(b)(1). 28 U.S.C. § 157(b)(2) contains a nonexclusive list of core proceedings.

"Non-core" proceedings are those that do not depend on the bankruptcy laws for their existence and that could proceed in another court even in the absence of bankruptcy. Wood, 825 F.2d at 96; Midgard, 204 B.R. at 771. The Tenth Circuit has adopted the widely used Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984) test to determine if a proceeding is related: "the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and

-13-

administration of the bankruptcy case." <u>Gardner v. United States</u> <u>(In re Gardner)</u>, 913 F.2d 1515, 1518 (10th Cir. 1990).

Bankruptcy courts have jurisdiction over non-core proceedings if they are at least "related to" a case under title 11. 28 U.S.C. § 157(c)(1)("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.") However, unless all parties consent otherwise, 28 U.S.C. § 157(c)(2), bankruptcy judges do not enter final orders or judgments in non-core proceedings. Rather, they submit proposed findings of fact and conclusions of law to the district court, which enters final orders and judgments after de novo review. 28 U.S.C. § 157(c)(1); Federal Bankruptcy Rule 9033. <u>See also</u> <u>Orion Pictures Corporation v.</u> <u>Showtime Networks, Inc. (In re Orion Pictures Corporation)</u>, 4 F.3d 1095, 1100–01 (2nd Cir. 1993)(discussing Section 157's classification scheme).

Finally, it should be obvious that the bankruptcy court lacks jurisdiction over matters that are not at least "related to" the bankruptcy case. <u>Celotex</u>, 514 U.S. at 308 n.6 ("[W]hatever test is used ... bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.") <u>See also</u> <u>Resorts Int'l</u>, 372 F.3d at 164 (citing <u>Celotex</u>).

Title 28 § 1334(e) further expands bankruptcy jurisdiction

-14-

in two ways.  First, § 1334(e)(1) grants the district court exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."  Second, § 1334(e)(2) grants the district court exclusive jurisdiction over "all claims or causes of action" that involve employment of professional persons in bankruptcy cases.

The jurisdiction over property, however, is temporal.  The statute grants exclusive jurisdiction over property "as of the commencement" of the case, and of "property of the estate" which would include earnings on estate property and recoveries of property by a trustee or debtor-in-possession.  However, when property is no longer "property of the estate" the court's jurisdiction ends.  Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990).

**EFFECT OF CONFIRMATION**

Bankruptcy Code section 1141 describes the effect of confirmation.  Two of those effects are relevant in this case. First, the confirmation order is a court order that binds all parties to the bankruptcy to the provisions of the confirmed plan.  11 U.S.C. § 1141(a).  Functionally, the confirmation order is a new contract for the parties.  In re Shenango Group, Inc., 501 F.3d 338, 344 (3rd Cir. 2007)(A court construes confirmation orders with contract principles.); Lefkowitz v. Michigan Trucking, LLC (In re Gainey Corp.), 447 B.R. 807, 818 (Bankr.

-15-

W.D. Mich. 2011)(The plan is effectively a new contract between the debtor and its creditors.)(Citing <u>Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)</u>, 456 F.3d 668, 676 (6th Cir. 2006), <u>cert. denied</u>, 549 U.S. 1317 (2007)), <u>aff'd.</u>, ___ B.R. ___, 2012 WL 3938521 (6th Cir. BAP 2012)(Unpublished.); <u>Poplar Run Five</u>, 192 B.R. at 856 (Interpret the plan as a contract); <u>Lacy v. Federal Deposit Ins. Co. (In re Lacy)</u>, 183 B.R. 890, 892 n.2 (Bankr. D. Colo. 1995)("The confirmed plan creates a new contract between the reorganized debtor and its creditors."); <u>May v. Lobo Land, LLC (In re Lobo Land, LLC)</u>, 2008 WL 5157985, *3 (Bankr. D. N.M. 2008)("A confirmed Chapter 11 plan is a contract and an order of the Court.")(Citations omitted.) <u>Accord Home and Land Owners, Inc. v. Angel Fire Resort Operations, L.L.C.</u>, 2003-NMCA-070, ¶ 18, 133 N.M. 733, 738, 69 P.3d 243, 248 (Courts construe confirmed bankruptcy plans as contracts); and <u>compare Schellhorn v. Farmers Savings Bank (In re Schellhorn)</u>, 280 B.R. 847, 853 (Bankr. N.D. Iowa 2002)("The provisions of a confirmed Chapter 12 plan bind the debtor and each creditor. A confirmed plan is a binding contract and <u>res judicata</u> as to all issues decided.")(Citations omitted.)

"The plan should be analyzed according to the principles of contract law of the state in which the plan was confirmed." <u>Id.</u> See also <u>Shenango Group</u>, 501 F.3d at 346 (Court applied

-16-

Pennsylvania contract law to construe a plan confirmed in the Western District of Pennsylvania.); <u>Gainley Corp.</u>, 447 B.R. at 818 ("When interpreting the confirmed plan, a court should utilize state law under long-settled contract law principles.") (Citations and internal punctuation omitted.); <u>Poplar Run Five</u>, 192 B.R. at 856 (The law of the state in which the plan was confirmed governs interpretation of a chapter 11 plan.)

Second, the confirmation order vests all of the property of the estate in the debtor, unless otherwise provided in the plan. 11 U.S.C. § 1141(b). In other words, confirmation terminates the estate. "It is well established in the Fifth Circuit, and many other circuits, that once the plan of reorganization has been confirmed, the estate ceases to exist." <u>Gilbane Building Co. v. Air Systems, Inc. (In re Encompass Services Corp.)</u>, 337 B.R. 864, 871 (Bankr. S.D. Texas), <u>aff'd.</u>, 2006 WL 1207743 (S.D. Texas 2006)(Citations omitted.) <u>See also</u> <u>Gardner</u>, 913 F.2d at 1518:

> A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. <u>In re Xonics, Inc.</u>, 813 F.2d 127, 131 (7th Cir. 1987). When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, <u>In re Hall's Motor Transit Co.</u>, 889 F.2d 520, 523 (3d Cir. 1989); <u>In re Xonics, Inc.</u>, 813 F.2d at 131; <u>In re Muller</u>, 72 B.R. 280, 284 (C.D. Ill. 1987), <u>aff'</u>d, 851 F.2d 916 (7th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1007, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989), and the property's relationship to the bankruptcy proceeding comes to an end. <u>See</u> <u>In re Hall's Motor Transit Co.</u>, 889 F.2d at 523. Thus, the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his

-17-

property unless the court cannot complete
administrative duties without resolving the
controversy.  In re Shirley Duke Assocs., 611 F.2d 15,
18 (2d Cir. 1979).

Compare 11 U.S.C. § 362(c)(1) ("Except as provided in subsections

(d), (e), (f), and (h) of this section--(1) the stay of an act

against property of the estate under subsection (a) of this

section continues until such property is no longer property of

the estate[.]") See also Poplar Run Five, 192 B.R. at 856 ("[T]he

estate ceased to exist upon plan confirmation and all estate

property not otherwise transferred under the plan reverted to the

debtor.")

**RESERVATION OF JURISDICTION PROVISIONS**

A typical Chapter 11 plan will contain a provision that

purports to retain jurisdiction in the bankruptcy court for

issues that 1) exist at confirmation but have not yet been

litigated to conclusion, 2) deal with post-confirmation issues of

plan implementation or interpretation, and/or 3) arise post-

confirmation.  See 11 U.S.C. § 1142 (Directing parties to comply

with post-confirmation orders and to execute documents or perform

other actions to assist consummation of the plan.)

Retention of jurisdiction provisions will be given
effect, assuming there is bankruptcy court
jurisdiction.  But neither the bankruptcy court nor the
parties can write their own jurisdictional ticket.
Subject matter jurisdiction "cannot be conferred by
consent" of the parties.  Coffin v. Malvern Fed. Sav.
Bank, 90 F.3d 851, 854 (3d Cir. 1996).  Where a court
lacks subject matter jurisdiction over a dispute, the
parties cannot create it by agreement even in a plan of

-18-

reorganization. <u>In re Continental Airlines, Inc.</u>, 236
B.R. 318, 323 (Bankr. D. Del. 1999), <u>aff'd</u>, 2000 WL
1425751 (D. Del. September 12, 2000), <u>aff'd</u>, 279 F.3d
226 (3rd Cir.2002) . Similarly, if a court lacks
jurisdiction over a dispute, it cannot create that
jurisdiction by simply stating it has jurisdiction in a
confirmation or other order. <u>Id.</u>; <u>accord</u> <u>United States</u>
<u>Trustee v. Gryphon at the Stone Mansion</u>, 216 B.R. 764,
769 (W.D.Pa. 1997) ("A retention of jurisdiction
provision within a confirmed plan does not grant a
bankruptcy court jurisdiction."), <u>aff'd</u>, 166 F.3d 552
(3d Cir. 1999). Bankruptcy courts can only act in
proceedings within their jurisdiction. <u>Donaldson v.</u>
<u>Bernstein</u>, 104 F.3d 547, 552 (3d Cir. 1997). If there
is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C.
§ 157, retention of jurisdiction provisions in a plan
of reorganization or trust agreement are fundamentally
irrelevant. But if there is jurisdiction, we will give
effect to retention of jurisdiction provisions.

<u>Resorts Int'l</u>, 372 F.3d at 161. <u>See also</u> <u>Walnut Assoc.</u>, 164 B.R.

at 492:

    Indeed, after a plan has been confirmed, subject
matter jurisdiction is specifically conferred on the
bankruptcy court to resolve only post-confirmation
matters, including issues necessary to carry out the
plan. <u>See also</u> <u>In re Dilbert's Quality Supermarkets,</u>
<u>Inc.</u>, 368 F.2d 922, 924 (2d Cir. 1966) (bankruptcy's
[sic] court's jurisdiction continues post-confirmation
to "protect its confirmation decree, to prevent
interference with the execution of the plan and to aid
otherwise in its operation," until entry of a final
decree). <u>Accord</u>, <u>In re Pittsburgh Terminal Coal Corp.</u>,
183 F.2d 520 (3d Cir. [1950]) (jurisdiction of
bankruptcy court depends upon "the provisions of [the
plan as] confirmed and reservations, not inconsistent
therewith, contained in order of confirmation."), <u>cert.</u>
<u>denied sub nom.</u>, <u>Pittsburgh Terminal Realization Corp.</u>
<u>v. Heiner</u>, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654
(1950); <u>In re Greenley Energy Holdings, Inc.</u>, 110 B.R.
173, 185 (Bankr. E.D. Pa. 1990) (jurisdiction retained
to resolve part ambiguities or disputes which affect
operation of plan between interested parties). <u>See</u>
Bankruptcy Rule 3020(d) ("notwithstanding the entry of
the order of confirmation, the court may enter all
orders necessary to administer the estate."); 11 U.S.C.

-19-

§ 1142. Section 1142 empowers bankruptcy courts to
enter orders necessary to implement plans of
reorganization. See Zerand-Bernal Group, Inc. v. Cox,
152 B.R. 927, 931 (Bankr. N.D. Ill.) ("[P]lain text [of
section 1142(b) ] leaves little doubt that
post-confirmation jurisdiction exists to the extent
necessary to consummate the plan."), aff'd, 158 B.R.
459 (N.D. Ill. 1993); Allied Technology, Inc. v. R.B.
Brunemann & Sons, Inc., 25 B.R. 484, 499 (Bankr. S.D.
Ohio 1982).

(One footnote incorporated in text, one footnote omitted.)

**FINDINGS OF FACT**

1.  Debtor filed its Chapter 11 petition on July 9, 1993. Doc
    1.

2.  Debtor confirmed an Amended Joint Plan of Reorganization on
    or about May 31, 1995. Doc 1293. The Order confirming the
    plan is final and non-appealable.

3.  The Plan and Supplemental Declaration were filed in the
    Colfax County real estate records after confirmation. Home
    and Land Owners, Inc., 2003-NMCA-070 at ¶ 4, 133 N.M. at
    736, 69 P.3d at 246.

4.  Angel Projects I, Ltd. became the successor in interest to
    the bankruptcy trustee pursuant to the Amended Joint Plan of
    Reorganization. Doc 1698.

5.  Angel Projects I, Ltd. filed a Motion for a final decree,
    alleging that disbursements had been made, a petition for
    writ of certiorari had been denied, claims had been paid to
    the extent allowed and provided for by the Plan, and that
    the estates had been fully administered. The Motion

-20-

requested that the Court retain jurisdiction to enforce prior judgments.  Id.

6.    After notice, no objections to the Motion for a final decree were filed and the Court entered its final decree on May 14, 2001.  Doc 1702.  The Final Decree finds that the estates of Angel Fire Corporation and Angel Fire Ski Corporation had been fully administered and orders that the estates be closed.  The Court retained jurisdiction "to enforce previous orders and judgments."

**CONCLUSIONS OF LAW**

1.    Resort's challenge to jurisdiction is a "facial attack." The Motion to Dismiss "merely challenges the sufficiency of the complaint".  The resolution of the jurisdictional issue is completely unrelated to the merits of Plaintiff's case. The jurisdictional issue requires an analysis of 28 U.S.C. § 157; Plaintiff's case seeks a declaratory judgment of the effect of a contract on his property under state law.  The issues are not "intertwined."  Therefore, the Court takes the allegations in the complaint as true.  The Court also will not consider any documentary evidence any party has introduced into the record.  Rather, the Court only reviews the complaint and takes judicial notice of the Court's files and published New Mexico state court opinions.  The Court specifically did not convert the Motion into one for Summary

Judgment.

2.    There is no estate remaining at this time.

3.    Plaintiff's complaint is not based upon any substantive
      provision of Title 11.  Therefore, it does not "arise under"
      a Title 11 case.

4.    Plaintiff's complaint did not accrue during the
      administration of the Debtors' estates.  Therefore, it does
      not "arise in" a Title 11 case.

5.    The bankruptcy cases are fully administered and closed.

6.    Plaintiff's complaint cannot impact the estate because there
      is no estate.

7.    To the extent Plaintiff's complaint claims jurisdiction
      based on a request to determine "property of the estate"
      under 28 U.S.C. § 1334(b)(2), all property has left the
      estate and no jurisdiction remains.  Gardner, 913 F.2d at
      1518.

8.    To the extent Plaintiff's complaint claims jurisdiction
      based on a request to interpret the plan, the plan is now a
      contract and its interpretation will be made based on New
      Mexico contract law.  Interpretation of the plan will not be
      based on bankruptcy law.

9.    Any success by Plaintiff on his complaint will not impact
      the distributions to other creditors.

10.  Plaintiff's claim is a dispute among non-debtor parties and

-22-

the outcome does not impact the estate or case
administration because the case is already closed.

11.  Plaintiff's claim is not "related to" a case under Title 11.

12.  The Final Decree retained jurisdiction only to enforce
previous orders and judgments.

13.  This Court lacks subject matter jurisdiction, which dictates
that the case be dismissed without prejudice.

14.  The Motion for Summary Judgment, based on a claim of lack of
subject matter jurisdiction, is denied as moot.  See Steel
Co. v. Citizens for a Better Environment, 523 U.S. 83, 94
(1998)("Without jurisdiction the court cannot proceed at all
in any cause.  Jurisdiction is power to declare the law, and
when it ceases to exist, the only function remaining to the
court is that of announcing the fact and dismissing the
cause.")(Quoting Ex parte McCardle, 7 Wall. 506, 514
(1868)).

15.  Having no subject matter jurisdiction, the Court does not
have the ability to abstain.  Cody, Inc. v. County of Orange
(In re Cody, Inc.), 281 B.R. 182, 189 (Bankr. S.D. N.Y.
2002)("[A]s a matter of logic, a court that lacks
jurisdiction over a matter cannot 'abstain' from deciding
that matter."), aff'd., 338 F.3d 89 (2d Cir. 2003).  See
also Steel Co., 523 U.S. at 94.  Therefore, the Motion to
Abstain will be denied as moot.

-23-

**CONCLUSION**

The Court finds the Motion to Dismiss well taken and will enter an Order granting it. The Motion for Summary Judgment and the Motion to Abstain will be denied by separate orders as moot.

Honorable James S. Starzynski
United States Bankruptcy Judge

Date entered on docket: November 20, 2012

Copies to:

Jeffery L. Thomason
Attorney for Plaintiff
PO Box 1402
Angel Fire, NM 87710

Walter L Reardon, Jr
Attorney for Resort
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

Melissa Ann Kennelly
Carol A. Neelley, PC
Attorney for Owners
705-A Paseo Del Pueblo Sur
Taos, NM 87571

-24-